*Marginal note:* ELISHA, *ex parte* 2. This court will not grant a writ of prohibition in a case in which it has no appellate jurisdiction, the am't in controversy not being sufficient. Nor is a writ of prohibition the appropriate proceeding in a court of merely appellate jurisdiction, inasmuch as its revisory power can afford relief without a resort to such proceedings.

---

## Elisha, of color, *ex parte*.                    Case 32.

### APPEAL FROM NELSON COUNTY COURT.

The provision in the *7th sec. 9th article, of the Rev. Statutes, page* 645, " that if a family of negroes shall be emancipated the proceeds of ' the labor of all shall be united in one common fund, and applied for ' the removal of all at the same time and to the same place," is not to be confined to cases where the emancipation is by the same owner, but may properly be applied to cases where the emancipation is of members of the same family by different owners.

[The facts of the case appear in the opinion of the court. REP.]

*John E. Newman*, for Elisha—

The principal question for the decision of the court is whether the *7th section of the IX article of the Revised Statutes*, 645, has any application to this case.

ELISHA, *ex parte*     That section declares: "If a family of negroes
'shall be emancipated, the proceeds of the labor of
'all shall be united in one common fund, and applied
'for the removal of all at the same time, and to the
'same place."

Whatever may have been the general doctrine as
to a *family*, amongst slaves, it is certain that this sec-
tion recognizes the relation of husband and wife and
children amongst negroes who are emancipated, even
before their title to freedom is fully completed under
the statutes. The only reason therefore relied upon
by the court below, for disregarding this humane and
just provision of the law, was that the family was not
emancipated by the same paper.

The statute does not say that if a family of
negroes shall be emancipated by *the same instrument*
the proceeds of the labor of all shall be united.
This judicial amendment or addition to the statute is
unauthorized by the spirit and object of the law.

This provision of the law is dictated by that chris-
tian and humane sentiment which condemns the
separation of husband, wife, and children. The ob-
ject of the law was to unite the family, and by send-
ing them all at the same time to the same place, se-
cure, as far as possible, to the family, the enjoyment
of that freedom which their master's had been pleas-
ed to give them. And another motive, no doubt,
was to secure the early removal of such people from
this state. An inspection of this record will show
that every object had in view by the legislature in
passing this provision, is defeated or violated by giv-
ing to the section the construction which has been
made of it by the court below. By joining the pro-
ceeds of the husband's labor to that of the wife and
children, the whole family will be removed from the
state in a year from this time. If he is sent away
the wife and six or seven children will be kept in the
state for many years. The family will be utterly de-
stroyed, and the kind intentions of their masters, and
of the commonwealth, will be defeated.

The difficulties that might exist in some supposed cases, in exercising jurisdiction under different instruments, in different tribunals, is entirely obviated in this case, by the offers and agreements tendered by Elisha to the court. Moreover, the order appealed from is defective, amongst other things, in not giving a true age and description of the man Elisha. This may be to him an important right, in order to identify his right to freedom under his master's will.

A reversal is therefore respectfully insisted on.

*J. W. Muir*, on the same side—

Elisha, in his petition, claims that he and his wife and children are, to all intents and purposes, *one family*, and that under the *7th section of the Revised Statutes*, 645, "the proceeds of the labor of all shall be ' united in one common fund, and applied for the re- ' moval of all at the same time, and to the same ' place"—that is, to Liberia.

It was shown by the testimony of Saml. Hahn that Elisha's family were mostly small children, and one that was frost-bitten and unproductive of hire; that it would take five or six years to raise a fund sufficient for their transportation to Liberia, unless they were aided by the hire of Elisha, and if his hire should be applied with theirs, for the one common object, the removal to Liberia could be accomplished in a much shorter time.

The court, however, adjudged that Elisha should be immediately removed from the state of Kentucky, and he has appealed to this court from the judgment.

There is no precedent by which this case can be determined. The *7th section of the Revised Statutes*, 645, is the clause of law by which it is to be settled. Elisha, his wife, and children—are they or not *one family?* Hahn says in his testimony that they are one family, so far as husband, wife, and children can constitute one family among negroes. Surely this fills the requisition of the law. And indeed it would

ELISHA, *ex parte*   seem inhumane to give any other construction to this
statute, in this case, for it would be separating for-
ever persons who in *fact* do constitute one family,
and who bear towards each other by nature those
tender relations which belong only to a family and
which not only moral law but statute law ought to
respect and hold sacred.

It is hoped that an ear of clemency will be given
in this case and the prayer of the humble petitioner,
husband, and father may not have been made in
vain.

Jan. 15, 1858.   Judge DUVALL delivered the opinion of the court.

The appellant was emancipated by the will of
Samuel Summers, and no funds having been provid-
ed for his removal from the state, the county court of
Nelson county appointed a trustee to hire him out
until his hire should produce a fund sufficient for that
purpose, according to the provisions of *article IX of
the Revised Statutes*, regulating the emancipation of
slaves. Elisha, having been summoned to show
cause why he should not leave the commonwealth
without further delay, presented a petition to the
Nelson county court setting forth, in substance, that
the trustee had in his hands about $216 as the pro-
ceeds of his hire under the former orders of the court,
and that he elected to accept his freedom under the
will of his late master; that Nathaniel Talbott was
the owner of a slave named Julia, and had, by his
will, emancipated Julia and her children upon con-
dition that they would go to Liberia; that many years
previously the appellant and Julia had been married
by the consent of their respective masters, and that
they had a family of five or six children; that his
master had emancipated him chiefly for the reason
that his wife and children had previously become en-
titled to their freedom, and he did not wish the fami-
ly separated; that his wife and children had estab-
lished their right to freedom, (upon the condition
stated,) by suit in the Nelson circuit court, which

court had directed them to be hired out for the purpose of raising a fund sufficient to transport them to Liberia; that this could not be accomplished under five or six years, and he therefore proposed that the proceeds of his labor should be united with that of his wife and children, as a common fund, to be applied to the transportation of all of them, at the same time, to Liberia, and that thereby they would be enabled to leave the state in less than half the time that would be otherwise required.

The material facts stated in the petition were proved, but the court, on final hearing, refused the application of Elisha, and made an order directing him to depart from the state on or before the 1st day of July, 1857. From that order he has prosecuted this appeal.

By the *7th section of art. 9 of Revised Statutes*, 645, it is provided, that "if a family of negroes shall be emancipated, the proceeds of the labor of all shall be united in one common fund, and applied for the removal of all at the same time, and to the same place."

There is certainly nothing in the language of this enactment, or in the obvious motives of policy as well as of humanity which dictated it, that restricts its application to cases in which the entire family are emancipated by the same person or by the same instrument. The relations of husband and wife, and of parent and child, are recognized by this section, and it is apparent that one of the objects of the legislature was to prevent the disturbance of those relations, by providing means of keeping the family together. It was also a part of the legislative policy to provide for the removal, from the state, of that class of persons with as little delay as practicable. Both of these objects will be promoted by extending the provisions of the section quoted to cases like the one before us; and a case can hardly be imagined in which either the rights or interests of the commonwealth, or of the

*Elisha, ex parte*

The provision in the 7th sec. 9th art. of Rev. Stat. page 645, "that if a family of negroes shall be emancipated the proceeds of the labor of all shall be united in one common fund, and applied for the removal of all at the same time and to the same place," is not to be confined to cases where the emancipation is by same owner, but may properly be applied to cases where the emancipation is of members of the same family by different owners

parties, could be prejudiced by the equitable con-struction we feel constrained to adopt.

We are satisfied, therefore, that it was the duty of the county court, upon the state of case presented by this record, to have made suitable orders for the hir-ing out of the appellant, and such of his family as are in condition to be hired, until the proceeds of the labor of all, united in a common fund, together with any thing they may receive from other sources, shall be sufficient for the removal of all, at the same time, to Liberia.

The order of the county court is therefore revers-ed, and the cause remanded for further proceedings in conformity with this opinion.